## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

RONALD DEWAYNE SMULLIN                                    PLAINTIFF

V.                          CASE NO. 3:15-CV-158 BD

BRETT DUNCAN, et al.                                      DEFENDANTS

## ORDER

### I.   Background:

Ronald Dewayne Smullin, an Arkansas Department of Correction inmate formerly

housed at the Craighead County Detention Center ("Detention Center"), filed this lawsuit

pro se under 42 U.S.C. § 1983.  In his complaint, Mr. Smullin claims Defendants Duncan,

Bentley, and Jackson acted with deliberate indifference to his medical needs after an

inmate attacked him at the Detention Center in April of 2015.

Mr. Smullin alleges that several hours after the inmate attack, Defendant Jackson

examined him and told him that he needed stitches.  In spite of this recommendation, Mr.

Smullin alleges, he never received stitches.  Mr. Smullin further alleges that on April 16,

2015, Defendant Bentley examined him but failed to recognize that his jaw was broken.

A week later, Mr. Smullin was examined by a dentist who noted that Mr. Smullin

was suffering from an oral infection and that four of his permanent teeth could not be

saved.  Mr. Smullin also alleges that he was not permitted to bring state-court criminal

charges against his assailant because Defendants did not timely respond to his grievances.

Mr. Smullin later moved to amend his complaint to include deliberate-indifference claims against Andy Allison, Officer Peaster, Matt Hall, Marty Boyd, and Gary Etter, as well as a failure-to-protect claim against Andy Allison and Officer Peaster.  The Court granted the motion to amend.  (#12, #15, #78, #89)

Defendants have now moved for summary judgment.  (#110, #114)  Mr. Smullin has responded to the motions (#118, #119, #120, #124), and Defendants have replied.[1] (#121, #129)

II.    **Discussion**:

A.    Standard

Summary judgment is proper when the facts important to the outcome of a lawsuit are not in dispute, and the moving party or parties are entitled to judgment without the need for a trial.  FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*,  477 U.S. 317, 322–23 (1986).

B.    Underlying Facts

On April 14, 2015, at about 12:45 p.m., Mr. Smullin approached Defendant Allison with a towel pressed against his lip.  He explained that he had fallen in the shower

---

[1] In his response to the County Defendants' motion, Mr. Smullin alleges that Defendant Allison denied him access to the Detention Center's law library.  (#118 at pp.49-52)  Because Mr. Smullin did not include that claim in his original or amended complaints, that claim is not part of this lawsuit and will not be addressed by the Court.

and needed to be moved.[2]  (#112-2 at p.1)  At that time, Defendant Allison instructed

Detention Center officials to review the security camera footage to determine how Mr.

Smullin was injured.  (*Id*.)  After viewing the video footage, Detention Center officials

determined that another detainee, S. Whitney, had struck Mr. Smullin in the face, injuring

Mr. Smullin.  (*Id*.)  Inmate Whitney was then relocated and "locked down."  (*Id*.)

According to Mr. Smullin's medical records, he was transported to the Detention

Center medical center at approximately 2:30 p.m., approximately an hour and a half after

the assault.  (*Id*. at p.2)  Defendant Jackson examined Mr. Smullin and noted that he had

an "oral injury," complained of oral pain, and had a "laceration to top [and] bottom lip."

(*Id*.)

Defendant Jackson contacted Defendant Arthur Bentley, M.D.  Upon hearing

Defendant Jackson's assessment, Dr. Bentley did not believe that Mr. Smullin needed

emergency treatment.  (#115-2 at pp.1-2)  Defendant Jackson ordered Mr. Smullin an ice

pack, gave him ibuprofen, and scheduled an appointment for Mr. Smullin to be examined

by Defendant Bentley on April 16, 2015.  (*Id*.)  Defendant Jackson also instructed Mr.

Smullin not to wiggle his loose teeth.

---

[2]  In his deposition, Mr. Smullin testified that he told Defendant Allison that someone had just "knocked [him] out" and that he "need[ed] to go to medical."  (#112-3 at p.24)

On April 16, 2015, Defendant Bentley examined Mr. Smullin.  He noted that, since the incident, Mr. Smullin had lost one tooth and three others were loose.[3]  (*Id*. at p.3)  At that time, Defendant Bentley did not note any sign of infection.  (*Id*.)  Defendant Bentley referred Mr. Smullin to a dentist and recommended that Mr. Smullin continue taking ibuprofen.  (*Id*.)

On April 21, 2015, Hunter Smith, D.D.S., examined Mr. Smullin.  (*Id*. at p.4; #112-4 at p.2)  Dr. Smith noted that Mr. Smullin suffered from a "fractured maxilla above teeth #8, 9, and 10."  (*Id*.)   Because Mr. Smullin was suffering from the fracture and an infection, however, Dr. Smith determined that the loose teeth should not be removed at that time.  (#112-4 at p.2)  Dr. Smith recommended that Mr. Smullin return to his office in a week for further treatment.  (*Id*.)  During the visit, Dr. Smith prescribed Amoxicillin for Mr. Smullin's oral infection, as well as narcotic pain medication.  (*Id*.)  Although Mr. Smullin received all doses of the Amoxicillin, Defendant Bentley determined that narcotic medication was not clinically appropriate and instead prescribed ibuprofen as an alternate pain remedy.  (#115-5 at p.22)

On April 27, 2015, Detention Center officials transported Mr. Smullin to Dr. Smith's office for treatment.  (#115-7 at p.2)  Dr. Smith examined Mr. Smullin and determined that tooth number eight needed to be extracted.  (#112-4 at p.2)  Dr. Smith

---

[3]  In his deposition, Mr. Smullin testified that he lost a tooth during the altercation with inmate Whitney.  (#112-3 at p.18)

extracted the coronal portion of tooth number eight and "temporized 9 and 10 to #11 with A2 flowable." (*Id.*; #118 at p.21)

On May 6 and again on May 15, 2015, Detention Center officials transported Mr. Smullin to Dr. Smith's office for further treatment. (#115-7 at pp.3-4) During both appointments, Dr. Smith noted that Mr. Smullin was healing and that the fracture was improving. (#112-4 at p.2,)

Again on June 3, 2015, Detention Center officials transported Mr. Smullin to Dr. Smith's office for treatment. (#115-7 at p.5) At that time, Dr. Smith extracted teeth nine and ten. (#112-4 at p.3)

On June 17, 2015, Detention Center officials transported Mr. Smullin to Dr. Smith's office for his final appointment. (#115-7 at p.6) Dr. Smith extracted teeth seven and eight. (#112-4 at p.3) At that time, Dr. Smith also provided Mr. Smullin a treatment plan for the replacing of the four removed permanent teeth. (#118 at pp.24-25) The next month, July of 2015, Mr. Smullin was transferred to the Arkansas Department of Correction. (#112-1 at p.1)

B.      Defendants Bentley and Jackson - Deliberate Indifference

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429

U.S. 97, 104 (1976)).[4]  This indifference extends to "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Id.*

A state official can be held liable for an eighth amendment violation only if he "knows of and disregards a serious medical need or a substantial risk to an inmate's health or safety."  *Nelson v. Corr. Med. Servs*., 583 F.3d 522, 528 (8th Cir. 2009).  To state a claim for deliberate indifference, Mr. Smullin must allege not only "that he suffered from an objectively serious medical need," but also "that [Defendants] actually knew of but deliberately disregarded his serious medical need."  *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014).  A medical condition is "objectively serious" if the prisoner was diagnosed by a doctor or the need for care is so obvious that a lay person would recognize the medical need.  *Id.*

Mr. Smullin must show "more than negligence, more even than gross negligence" to succeed on his deliberate-indifference claim.  *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).  "Merely demonstrating that a prison doctor committed medical malpractice is

---

[4]  Mr. Smullin was a pretrial detainee at the time the events giving rise to this lawsuit occurred.  As a result, Mr. Smullin's claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment.  See *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (stating "[t]his makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment").

insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060,

1065-1066 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Fourte*,

746 F.3d at 389).  Mr. Smullin must show that the Defendants' actions were "so

inappropriate as to evidence intentional maltreatment or a refusal to provide essential

care."  *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing *Smith v.

Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).  See also *Allard v. Baldwin*, 779 F.3d 768,

771-72 (8th Cir. 2015) (to prevail on Eighth Amendment claim, inmate must show that

defendants' mental state was akin to criminal recklessness).

Here, Mr. Smullin has failed to present sufficient evidence for the Court to

conclude that Defendants Jackson and Bentley were criminally reckless in providing him

medical treatment.

1.     Defendant Jackson

On the date of the incident, Defendant Jackson examined Mr. Smullin, notified

Defendant Bentley of her assessment, and processed Defendant Bentley's orders.  Mr.

Smullin's medical records confirm that he received all medication ordered by Defendant

Bentley and that Defendant Jackson submitted Mr. Smullin's referral so that he could be

transported to the dentist.  Mr. Smullin alleges that he did not receive the ice pack that

Defendant Bentley ordered for him; that he did not get the stitches that were medically

indicated; that Defendant Jackson failed to provide him salt to rinse his mouth; and that

Defendant Jackson should have had him taken him for emergency medical treatment for

his oral injuries.  None of these allegations are enough to show deliberate indifference on the part of Defendant Jackson.

First, it is unclear whether Mr. Smullin received an ice pack.  Assuming that he did not, there is no evidence indicating that he suffered any additional injury as a result of Defendant Jackson's failure to provide him an ice pack.  Moreover, in the affidavit attached to the Medical Defendants' motion for summary judgment, Defendant Jackson testified that, although she was responsible for processing the order for the ice pack, she was not responsible for actually providing the ice pack to Mr. Smullin.  (#112-2 at p.2; #115-9 at p.2)  It is undisputed that Defendant Jackson processed the order for the ice pack on April 14, 2015 (#115-9 at p.2), and there is no evidence to indicate that Defendant Jackson knew that the ice pack was not delivered to Mr. Smullin.

Second, Mr. Smullin's allegation that he needed sutures is not supported in the record.  The only evidence of a need for sutures is Mr. Smullin's own belief.  On April 23, 2015, he completed a health services request form.  The form includes a section for the detainee to provide information about his injury or illness and is printed for the detainee.  (#115-10 at p.1)  On the health services form relevant here, Mr. Smullin specifically noted that he needed sutures, but neither Defendant Jackson nor Defendant Bentley noted a need for sutures during their examinations of Mr. Smullin.  In fact, Defendant Jackson specifically told Mr. Smullin that his injuries did *not* require sutures or emergency treatment.  (#115-9 at p.1)

Third, Defendant Jackson's alleged failure to provide Mr. Smullin salt to rinse his mouth falls far short of establishing a deliberate-indifference claim.

Fourth, Mr. Smullin's argument that Defendant Jackson violated his constitutional rights by failing to provide him emergency treatment is at odds with the record. According to Defendant Jackson, the treating physician must make the determination as to whether an inmate needs emergency medical treatment. (#115-9 at p.1)   She lacks the power to override the physician's decision. (*Id.*)

Here, Dr. Bentley did not believe that Mr. Smullin needed emergency medical treatment on April 14, 2015, based on Defendant Jackson's assessment, or on April 16, 2016, when he examined Mr. Smullin. (#115-2 at pp.1-2)   Mr. Smullin might disagree with the treatment provided, but a mere disagreement with a treatment decision is not enough to prove deliberate indifference to a serious medical need. *Meuir v. Greene Cty. Jail Emps*., 487 F.3d 1115, 1118 (8th Cir. 2007) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)) ("inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment").   Mr. Smullin has failed to present any evidence that Defendant Jackson intentionally ignored his need for medical treatment after the incident. Thus, Defendant Jackson is entitled to judgment as a matter of law on Mr. Smullin's claims against her.

2.      Defendant Bentley

With regard to Defendant Bentley, Mr. Smullin essentially disagrees with the treatment that Defendant Bentley provided.  Mr. Smullin primarily claims that Defendant Bentley failed to provide him with emergency dental care.

In the affidavit attached to the Medical Defendants' motion for summary judgment, Defendant Bentley testified that, in his medical opinion, emergency medical treatment was not necessary either on the date of the incident, or on April 16, 2016, the date that Defendant Bentley examined Mr. Smullin.  (#115-2 at pp.1-2)

Here, Mr. Smullin has failed to present any evidence that his teeth could have been saved if he had received emergency dental treatment.  Further, during his deposition, Mr. Smullin admitted that Dr. Smith never told him that his teeth could have been saved had he been evaluated by a dentist sooner.  (#115-5 at p.22)  See *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (to prevail on claim that delay in medical care constituted cruel and unusual punishment, inmate must show deprivation of serious medical need and deliberate indifference to his health and safety; objective seriousness of deprivation is measured by reference to effect of delay, which must be established by verifying medical evidence).  Mr. Smullin appears to believe that he would not have suffered from an infection in his mouth had he received emergency treatment.  Even assuming that to be true, the failure to properly diagnose Mr. Smullin and the failure to provide him with antibiotics constitutes negligence at most.  Defendant Bentley specifically testified that he did not see any sign of infection on the date that he examined Mr. Smullin.

Finally, Mr. Smullin's contends that Defendant Bentley failed to adequately treat his medical needs by prescribing ibuprofen rather than narcotic pain medication. Dr. Bentley, however, testified that he did not believe that narcotic pain medication was clinically necessary. (#115-2 at p.2) Again, Mr. Smullin cannot defeat a motion for summary judgment based on his mere disagreement with the treatment provided by Defendant Bentley.

Here, Mr. Smullin has failed to present any evidence that Defendant Bentley either intentionally ignored his medical needs or that the treatment Defendant Bentley provided was grossly inadequate. Therefore, Defendant Bentley is entitled to judgment as a matter of law on Mr. Smullin's claims against him.

C.      Defendants Allison, Boyd, Duncan, Etter, Hall, and Peaster

In their motion for summary judgment, Defendants Allison, Boyd, Duncan, Etter, Hall, and Peaster (the "County Defendants") first argue that Mr. Smullin's official-capacity claims against them fail because he did not allege that he was injured as a result of a Craighead County policy or custom. They also contend that they are entitled to qualified immunity on Mr. Smullin's individual-capacity claims.[5] They also argue that Mr. Smullin's failure-to-protect claims, his deliberate-indifference claims, and his claims that the County Defendants failed to respond to grievances in a timely manner all fail as a

---

[5] For the reasons provided below, the County Defendants are entitled to qualified immunity on Mr. Smullin's failure-to-protect claim against them. Because Mr. Smullin's remaining claims against the County Defendants fail as a matter of law, the Court will not address the Defendants' qualified immunity arguments as it relates to those claims.

matter of law.  They further contend that any delay Mr. Smullin has not stated a

constitutional claim to relief for any delay in bringing state-court criminal charges against

inmate Whitney.

       1.     Official Capacity Claims

The County Defendants are all employees of Craighead County, Arkansas.

Therefore, Mr. Smullin's official-capacity claims against these Defendants are, in effect,

claims against Craighead County.  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).

Local governments are not liable under § 1983 for injuries inflicted solely by their

employees or agents.  *Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98

S.Ct. 2018 (1978).  Rather, a county is liable for the acts of its employee only when the

employee is carrying out a county policy or custom.  *Id*.; *Jenkins v. County of Hennepin,

Minn.*, 557 F.3d 628, 632 (8th Cir. 2009).

For purposes of § 1983, a policy is a "deliberate choice of a guiding principle or

procedure made by the municipal official who has final authority regarding such matters."

*Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010).  To establish a custom, a

plaintiff must prove that the county engaged in a continuing pattern of unconstitutional

misconduct, not just a single unconstitutional act.  *Id*. at 902-903.

Here, Mr. Smullin has not alleged that he suffered any injury as a result of any

custom or policy of Craighead County, Arkansas.  As a result, his claims against the

County Defendants in their official capacities must be dismissed.

2.      Failure-to-Protect Claim

In his deposition testimony, Mr. Smullin testified that he did not know inmate Whitney prior to the incident that took place on April 14, 2015, and that he had no reason to believe that inmate Whitney was going to attack him on that date.  (#112-3 at p.17)

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  See *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  In order to establish this constitutional violation, Mr. Smullin must prove that his incarceration with inmate Whitney posed a substantial risk of serious harm (objective component), and that the County Defendants actually knew of, or were deliberately indifferent to, the risk Mr. Smullin faced, but disregarded that risk (subjective component).  *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003); *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998).

Here, Mr. Smullin concedes that he was injured as a result of a surprise attack. The Court cannot conclude that the County Defendants disregarded any known risk to Mr. Smullin's health or safety because there is no indication that either Mr. Smullin or the County Defendant knew that Detainee Whitney posed a risk to Mr. Smullin.  When a failure-to-protect claim arises from a surprise attack, like the attack at issue here, prison officials are entitled to qualified immunity.  See *Schoelch v. Mitchell*, 625 F.3d 1041, 1047-48 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001-02 (8th Cir. 2002); *Curry*

13

*v. Crist*, 226 F.3d 974, 978-79 (8th Cir. 2000).  The County Defendants are entitled to qualified immunity on Mr. Smullin's failure-to-protect claims against them.[6]

       3.       Deliberate Indifference

The County Defendants transported Mr. Smullin to the medical center at the Detention Center within two hours of the underlying incident.  Although Mr. Smullin remained in his barracks during the delay, he was evaluated by the medical staff, who determined that he was not in need of emergency medical treatment.  In any event, Mr. Smullin has offered no evidence indicating that his teeth could have been saved had he been immediately transported to the Medical Center.  It is undisputed that Detention Center officials transported Mr. Smullin to Dr. Smith's office for each of his scheduled appointments.

Mr. Smullin has failed to present any evidence to support a conclusion that the County Defendants intentionally failed to provide him medical treatment or ignored his serious medical needs.  While the Court has some concerns that Mr. Smullin remained in his barracks while bleeding (perhaps profusely) from his mouth, any delay that Mr. Smullin experienced in receiving any medical treatment constitutes negligence, or gross

---

[6] To the extent that Mr. Smullin claims that Defendant Allison failed to protect him by leaving him in the barracks while investigating the situation, this claim also fails. As noted, there is a dispute of fact as to whether Mr. Smullin told Defendant Allison that he had been attacked by a fellow inmate immediately following the attack. Even if he did, Defendant Allison's conduct constitutes gross negligence at most. It is undisputed that, at that time, Mr. Smullin had not identified his attacker and had not told Defendant Allison that he feared for his safety.

negligence, at worst.  Because negligent conduct is insufficient to support a constitutional

claim, Mr. Smullin's deliberate-indifference claims fail as a matter of law.[7]

      4.      Failure to Respond to Mr. Smullin's Grievances

To the extent that Mr. Smullin claims that the County Defendants failed to

properly respond to his grievances, this claim also fails.  The law is settled that an inmate

does not have a constitutional right to an inmate grievance procedure.  *Lomholt v. Holder*,

287 F.3d 683, 684 (8th Cir. 2002); and *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.

1993).  Therefore, a prison official's failure to properly process or respond to a grievance,

standing alone, is not actionable under § 1983.

      5.      State-Court Criminal Charges

Mr. Smullin complains that he was delayed in bringing state-court criminal

charges against inmate Whitney.  On May 26, 2015, Mr. Smullin completed a probable

cause affidavit regarding the underling incident, and inmate Whitney was later convicted

of second degree battery.  (#118 at p.31)  Inmate Whitney is currently serving his

sentence in the ADC.  (#112-3 at p.33)

---

[7] In his response to the County Defendant's motion for summary judgment, Mr. Smullin also contends that the County Defendants did not follow their "Emergency (24) hour Dental Policy."  (#118 at p.1)  The failure to follow prison policy or procedure, however, fails to rise to a constitutional level.  *McClinton v. Arkansas Dep't of Corr.*, 166 Fed. Appx. 260 (8th Cir. 2006) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

Furthermore, Mr. Smullin lacks standing to bring state-court criminal charges against an individual.  The State of Arkansas is the only entity that can initiate state criminal actions.  For that reason, Mr. Smullin cannot move forward on this claim.

6.      Probable Cause Affidavit

Finally, Mr. Smullin claims that, in the probable cause affidavit against inmate Whitney, Defendant Etter incorrectly stated that Mr. Smullin was taken to St. Bernard's Regional Medical Center for emergency treatment immediately following the attack. (#112-3 at p.48; #118 at p.31)  Again, this fact cannot support a constitutional claim.

## III.   Conclusion:

Based on the undisputed evidence in the record, the Defendants' motions for summary judgment (#110, #114) are GRANTED.  Mr. Smullin's 42 U.S.C. § 1983 claims are DISMISSED, with prejudice.[8]  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED, this 1st day of June, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[8] In the prayer for relief in his original complaint, Mr. Smullin asks that the Court order the County Defendants to pay for his permanent teeth to be replaced.  (#1 at p.4) In his response to the Defendants' motions for summary judgment, Mr. Smullin attaches a Craighead County inmate grievance form in which Defendant Hall states, "ADC is going to take care of your teeth.  I said that if ADC didn't fix it then the [C]ounty would." (#118 at p.102)  At this time, the ADC has refused to replace Mr. Smullin's teeth.  (#118 at p.90)  Because Mr. Smullin's federal claims fail as a matter of law, he is not entitled to the relief requested in this §1983 lawsuit.  The Court expresses no opinion as to state claims Mr. Smullin may have.